IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| Jennifer Cano, Individually and as the Administrator of the Estate of Pedro Cano Rodriguez; Kimberly Cano, Individually; and Peter Junior Cano, Individually, | CASE NO. 3:20-cv-00094-JAJ-HCA |
| **Plaintiffs,** | |
| vs. | |
| Tyson Foods, Inc.; Tyson Fresh Meats, Inc.; John H. Tyson; Samuel Dean Banks; Noel White; Tom Brower; Elizabeth Croston; Stephen R. Stouffer; Brent R. McElroy; Ed McAtee; Scott Little; Doug White; Laurie Garcia; and Amanda Brown, | |
| **Defendants.** | |

_____

**BRIEF IN SUPPORT OF
TYSON FOODS, INC. and TYSON FRESH MEATS, INC.'S
MOTION TO DISMISS**


**(Oral Argument Requested)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND STATEMENT OF ISSUES...................................................... 1

BACKGROUND.................................................................................................... 3

ARGUMENT ......................................................................................................... 4

I.    Plaintiffs' claims are barred in this Court under the Iowa Workers'
      Compensation Act. ..................................................................................... 4

      A.    Plaintiffs' attempts to avoid the IWCA are without merit. ................... 5

      B.    Plaintiffs cannot circumvent the IWCA by recasting workplace
            injury claims as fraud. .......................................................................... 7

II.   Plaintiffs' claims are not adequately pleaded. .................................................. 8

      A.    The complaint fails to plead fraud with particularity. ......................... 8

      B.    The complaint fails to adequately plead causation, reliance, and
            knowledge of falsity................................................................................. 11

III.  The complaint fails to comply with the Iowa COVID-19 Response and
      Back-to-Business Act. ...................................................................................... 16

IV.   Plaintiffs' claims are preempted by federal law. ............................................. 17

      A.    The complaint takes no account of the broad, express preemp-
            tion of the Federal Meat Inspection Act (FMIA)................................. 17

      B.    The complaint takes no account of the federal designation of Ty-
            son facilities as critical infrastructure. ............................................... 18

CONCLUSION........................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v.*
   *Lockridge,*
   403 U.S. 274 (1971) ................................................................. 19

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC,*
   949 F.3d 417 (8th Cir. 2020) ...................................................... 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................... passim

*Bailey v. Batchelder,*
   576 N.W.2d 334 (Iowa 1998) ...................................................... 4

*Brown v. N. Cent. F.S., Inc.,*
   987 F. Supp. 1150 (N.D. Iowa 1997) ........................................... 10

*Cary v. Hickenlooper,*
   673 F. App'x 870 (10th Cir. 2016) ............................................. 15

*Cincinnati Ins. Cos. v. Kirk,*
   801 N.W.2d 856 (Iowa Ct. App. 2011) ...................................... 1, 7

*Crest Constr. II, Inc. v. Doe,*
   660 F.3d 346 (8th Cir. 2011) ................................................ 9, 11

*Crosby v. Nat'l Foreign Trade Council,*
   530 U.S. 363 (2000) ............................................................... 18

*Drobnak v. Andersen Corp.,*
   561 F.3d 778 (8th Cir. 2009) ............................................. 2, 8, 9

*Gibson v. ITT Hartford Ins. Co.,*
   621 N.W.2d 388 (Iowa 2001) .............................................. 10, 13

*Gunderson v. ADM Inv'r Servs., Inc.,*
   85 F. Supp. 2d 892 (N.D. Iowa 2000) ......................................... 10

*Hager v. Ark. Dep't of Health,*
   735 F.3d 1009 (8th Cir. 2013) .................................................. 14

*Hardin Cty. Sav. Bank v. City of Brainerd,*
   602 F. Supp. 2d 1012 (N.D. Iowa 2008) ...................................... 11

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

CASES (CONT.)

*Harned v. Farmland Foods, Inc.*,
   331 N.W.2d 98 (Iowa 1983) ................................................................. 2, 6

*In re RFC & ResCap Liquidating Tr. Action*,
   444 F. Supp. 3d 967 (D. Minn. 2020) ................................................. 12

*Jensen v. Vanderleest*,
   Nos. 9-369, 98-1950, 1999 WL 975879 (Iowa Ct. App. Oct. 27, 1999) ................... 5

*Kloster v. Hormel Foods Corp.*,
   612 N.W.2d 772 (Iowa 2000) .............................................................. 5, 6

*Mielke v. Ashland, Inc.*,
   Civ. No. 4:05-CV-88, 2005 WL 8157992 (S.D. Iowa July 29, 2005) ................... 1, 7

*Missourians for Fiscal Accountability v. Klahr*,
   830 F.3d 789 (8th Cir. 2016) .............................................................. 12

*Moua v. Jani-King of Minn., Inc.*,
   613 F. Supp. 2d 1103 (D. Minn. 2009) ................................................. 9

*Nat'l Meat Ass'n v. Harris*,
   565 U.S. 452 (2012) ........................................................................ 17

*Nelson v. Lindaman*,
   867 N.W.2d 1 (Iowa 2015) ................................................................. 16

*Nelson v. Winnebago Indus., Inc.*,
   619 N.W.2d 385 (Iowa 2000) .............................................................. 7

*Nuss v. Cent. Iowa Binding Corp.*,
   284 F. Supp. 2d 1187 (S.D. Iowa 2003) ................................................. 9

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*,
   831 F.3d 961 (8th Cir. 2016) .............................................................. 12

*Peterson v. Silverado Senior Living, Inc.*,
   790 F. App'x 614 (5th Cir. 2019) ........................................................ 14

*Phillips v. Covenant Clinic*,
   625 N.W.2d 714 (Iowa 2001) .............................................................. 11


# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

### CASES (CONT.)

*Rancho Viejo, LLC v. Norton,*
   323 F.3d 1062 (D.C. Cir. 2003) ............................................................................... 18

*Remmes v. Int'l Flavors & Fragrances, Inc.,*
   389 F. Supp. 2d 1080 (N.D. Iowa 2005) ................................................................... 8

*Rincon v. Covidien,*
   No. 16-CV-10033 (JMF), 2017 WL 2242969 (S.D.N.Y. May 22, 2017) ................ 15

*Roland v. Annett Holdings, Inc.,*
   940 N.W.2d 752 (Iowa 2020) .................................................................................... 5

*Schaaf v. Residential Funding Corp.,*
   517 F.3d 544 (8th Cir. 2008) ............................................................................. 11, 15

*Schneider v. Par.,*
   242 Iowa 1147, 49 N.W.2d 535 (1951) ................................................................... 17

*Suckow v. NEOWA FS, Inc.,*
   445 N.W.2d 776 (Iowa 1989) .................................................................................... 6

*Swindol v. Aurora Flight Scis. Corp.,*
   805 F.3d 516 (5th Cir. 2015) ................................................................................... 12

*Tigges v. City of Ames,*
   356 N.W.2d 503 (Iowa 1984) .................................................................................... 5

*U.S. ex rel. Roop v. Hypoguard USA, Inc.,*
   559 F.3d 818 (8th Cir. 2009) ............................................................................. 10, 11

*Valentine v. Collier,*
   960 F.3d 707 (5th Cir. 2020) ................................................................................... 12

*Walker v. Mlakar,*
   489 N.W.2d 401 (Iowa 1992) .................................................................................... 5

*Weimer v. Int'l Flavors & Fragrance,*
   240 F.R.D. 431 (N.D. Iowa 2007) ............................................................................ 9

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**STATUTES**

21 U.S.C. § 678 ........................................................................................ 3, 17

9 Larson's Workers' Compensation Law § 104.05 ...................................... 6

Iowa Code § 85.3(1) .................................................................................. 5

Iowa Code § 85.20 ..................................................................................... 8

Iowa Code § 85.20(1) ................................................................................ 4

Iowa Code § 686D.4 .............................................................................. 16, 17

Iowa Code § 686D.5 ................................................................................. 17

Iowa Code § 686D.8 ................................................................................. 16


**OTHER AUTHORITIES**

9 C.F.R. § 416.5(c) ................................................................................. 3, 18

85 Fed. Reg. 26,313 (Apr. 28, 2020) ....................................................... 18

Fed. R. Civ. P. 9(b) .................................................................................. 8

IA LEGIS 1070 (2020), 2020 Ia. Legis. Serv. Ch. 1070 (S.F. 2338) ........... 16

## INTRODUCTION AND STATEMENT OF ISSUES

The United States is facing a global pandemic with an impact and scope that are without modern precedent. Millions have been infected with the novel coronavirus, and more than 280,000 Americans have died of complications related to COVID-19.

Plaintiffs allege that Pedro Cano Rodriguez experienced a workplace injury at Tyson's Columbus Junction, Iowa pork processing facility. Plaintiffs allege that Mr. Rodriguez contracted COVID-19 at work and began experiencing symptoms on April 2, 2020 (the same day that Louisa County, Iowa recorded its first two cases), and that he tragically died soon after, becoming one of the first Iowa residents to succumb to the disease. Plaintiffs allege a single claim against Tyson, "Fraudulent Misrepresentation and Nondisclosure," for the alleged workplace injury.

That Mr. Rodriguez is one of the hundreds of thousands of Americans who have died of COVID-19 is a tragedy. But this Court is the wrong forum to resolve Plaintiffs' claims. Iowa has a strict, no-fault workers' compensation system that is overseen by the Workers' Compensation Commissioner. Plaintiffs' claim against Tyson is barred— at least in this Court—under the exclusive remedy provisions of  the Iowa Workers' Compensation Act ("IWCA"), which directs that workplace injury claims must be adjudicated by the Iowa Division of Workers' Compensation.

Plaintiffs attempt to circumvent the IWCA by recasting the workplace injury claim as one for fraudulent misrepresentation. But "where a claim is predicated on the same facts as the work injury itself, simply labeling it as fraud is not sufficient to avoid the exclusivity of the Workers' Compensation Act." *Cincinnati Ins. Cos. v. Kirk*, 801 N.W.2d 856, 863 (Iowa Ct. App. 2011). *See also Mielke v. Ashland, Inc.*, Civ. No. 4:05-CV-88, 2005 WL 8157992, at *4 (S.D. Iowa July 29, 2005) (granting motion to dismiss misrepresentation claim) (quoting *Nelson v. Winnebago Indus., Inc.*, 619 N.W.2d 385, 389 (Iowa 2000)). Moreover, even if the fraudulent misrepresentation

claim were not barred by the IWCA, it still must be dismissed because it fails to state a claim and fails to satisfy the heightened pleading standards of Rule 9(b).

Plaintiffs also state in passing that Tyson is "vicariously liable" for the actions of its employees, whom Plaintiffs accuse of "gross negligence." But while a narrow exception exists under the IWCA for claims brought against coemployees for "wanton gross negligence," **there is no "wanton gross negligence" exception for employers**, and Iowa courts have rejected attempts to create one: "The legislature is obviously aware of an employer's blanket immunity [under the IWCA] and seems anxious to protect it. It could have created an exception for the gross negligence or intentional torts of an employer when it did so for fellow employees but chose not to do so." *Harned v. Farmland Foods, Inc.*, 331 N.W.2d 98, 100 (Iowa 1983).

The Court need go no further. The claims against Tyson are barred under the IWCA, and the complaint should be dismissed on that basis alone.

\*   \*   \*

Even if this Court had subject matter jurisdiction, however, dismissal of the claims against Tyson would still be appropriate for the following reasons.

**First, lack of particularity.** The misrepresentation claim must be dismissed because it falls far short of the particularity requirement of Rule 9(b). That Rule requires that "the complaint must plead the 'who, what, where, when, and how' of the alleged fraud." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (quoting *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006)). But the complaint provides no such detail, instead alleging merely that various statements were allegedly made by unidentified individuals, in unknown ways, at unstated times and places. Indeed, the complaint itself acknowledges that gap: the key allegations that purport to identify the alleged misrepresentations are expressly qualified as on "information and belief."

**Second, plausibility.** Plaintiffs must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Here, the complaint alleges that Tyson made various supposed misrepresentations regarding workplace conditions at the early stages of the pandemic. But the reader is left to speculate how Tyson's alleged statements were false, how Mr. Rodriguez detrimentally relied on them, and how reliance, if any, on such statements caused Mr. Rodriguez to contract COVID-19.

**Third, Plaintiffs' claims are inconsistent with state and federal law.** Even if the complaint were not barred by the IWCA and fatally lacking in specificity, it is not consistent with the Iowa "COVID-19 Response and Back-to-Business Limited Liability Act," and fails to allege how its theory of liability could fit within the express preemption of the Federal Meat Inspection Act ("FMIA"), which preempts state-law requirements that are "in addition to" or "different than" the rigorous and extensive federal requirements under the FMIA. *See* 21 U.S.C. § 678; *see also, e.g.*, 9 C.F.R. § 416.5(c) (setting federal requirements under the FMIA regarding cleanliness, protective attire, and "disease control").

Legal claims for workplace exposure and illness arising from the COVID-19 pandemic are not exempt from workers' compensation laws, well-established pleading standards, preemption doctrines, or immunity provisions. As more fully set forth below, the complaint here should be dismissed.

## BACKGROUND

Plaintiffs filed this lawsuit in the Iowa District Court for Johnson County in September 2020, naming fourteen Defendants: Tyson Foods, Inc., Tyson Fresh Meats, Inc., and twelve individual Tyson employees. [Dkt. 1-1] Defendants timely removed to this Court based on federal officer and federal question jurisdiction. [Dkt. 1]

The complaint alleges that Mr. Rodriguez worked at the Columbus Junction facility; that he contracted COVID-19; and that he passed away from the disease.

[Dkt. 1-1 ¶¶ 2, 42, 44] Plaintiffs allege that Mr. Rodriguez "developed COVID-19 symptoms" on April 2. [*Id.* ¶ 39]

Mr. Rodriguez passed away on April 14, as one of the first Iowans to succumb to the pandemic. [*Id.* ¶ 1] Plaintiffs do not identify how Mr. Rodriguez contracted COVID-19, or which, if any, of the purportedly unimplemented safety measures at Tyson's facility would have prevented that result.

The complaint asserts a single cause of action ("Count II") against Tyson for "Fraudulent Misrepresentation and Non-Disclosure." [*Id.* ¶¶ 70-78] To support that claim, the complaint alleges that Tyson's "agents" made alleged "false representations and/or omissions" concerning various general topics and that these statements were "a cause of Plaintiffs' injuries." [*Id.* ¶¶ 72, 77] But the complaint does not allege facts to support these conclusions. The complaint fails to identify any false, material statement made by any particular Tyson "agent" prior to April 2 (or at any time). Nor does the complaint allege facts as to how any statement influenced Mr. Rodriguez or caused him to contract COVID-19. Not only does the complaint fail to allege facts as to how any alleged statement was false, it also fails to allege facts demonstrating that the alleged statements were *knowingly* false when made by Tyson agents. Tellingly, the purported "misrepresentations" identified in Count II are alleged against Tyson on "information and belief" rather than specifically pleaded facts. [*Id.* ¶ 72(a)-(g) (alleging "false representations and/or omissions" made on information and belief)]

# ARGUMENT

## I.    Plaintiffs' claims are barred in this Court under the Iowa Workers' Compensation Act.

The IWCA provides the exclusive remedy for workplace injury claims asserted against an employer. Iowa Code § 85.20(1). *See also Bailey v. Batchelder*, 576 N.W.2d 334, 337-38 (Iowa 1998) ("The injured employee's right to workers' compensation is the employee's exclusive remedy against the employer."). "[A]n employer is always

immune from common law tort liability pursuant to" the IWCA. *Jensen v. Vanderleest*, Nos. 9-369, 98-1950, 1999 WL 975879, at *3 (Iowa Ct. App. Oct. 27, 1999).

The IWCA applies when an employee sustains "personal injuries . . . arising out of and in the course of the employment." Iowa Code § 85.3(1). Plaintiffs allege that Mr. Rodriguez "contracted the virus as a result of exposure at the Tyson" facility and that he was a Tyson employee "[a]t all material times." [Dkt. 1-1 ¶¶ 2, 44] The IWCA is therefore the "exclusive remedy" against Tyson for alleged workplace injuries under Iowa Code § 85.20. *Walker v. Mlakar*, 489 N.W.2d 401, 403 (Iowa 1992) (IWCA "is an injured worker's exclusive remedy against an employer or coemployee, thereby providing the employer and coemployee immunity from common law tort liability").

Under Iowa law, the proper venue for resolving Plaintiffs' claims is the Iowa Division of Workers' Compensation—not this Court. *See Tigges v. City of Ames*, 356 N.W.2d 503, 509 (Iowa 1984) (affirming dismissal for lack of jurisdiction where the IWCA's exclusivity provision applies). In fact, a workers' compensation claim has already been initiated on Mr. Rodriguez's behalf, seeking benefits for the very same alleged workplace injury that is the subject of this case.[1]

This Court should dismiss the complaint on this basis alone.

## A.    Plaintiffs' attempts to avoid the IWCA are without merit.

Plaintiffs try to plead around the exclusivity provisions of the IWCA by styling their claim against Tyson as one for "Fraudulent Misrepresentation." That attempt should be rejected.

End-runs around exclusivity are impermissible when the essence of the claim is injury at work. In *Kloster v. Hormel Foods Corp.*, 612 N.W.2d 772, 774-75 (Iowa 2000),

---

[1] The claim was denied for procedural reasons unrelated to the merits, and the claimant has not yet pursued further administrative remedies. *See Roland v. Annett Holdings, Inc.*, 940 N.W.2d 752, 761 (Iowa 2020) (workers' compensation claimants must "exhaust[] their administrative remedies").

an employee took a similarly "novel approach to bypass the provisos imposed by the workers' compensation statute" by casting a workplace injury claim as one for tortious interference with medical care. The Supreme Court of Iowa set aside the plaintiff's attempt to reframe the claims to avoid the exclusivity provision of the IWCA, and instead focused on the "essence" of the allegations, holding that it was "readily apparent [the plaintiff] had recourse under the [IWCA] to request [relief for his alleged injuries]" and that the IWCA provided his "exclusive remedy." *Id.* at 775. "If the essence of the wrong, then, is personal injury or death, and if the usual conditions of coverage are satisfied, the action must be barred by the exclusiveness clause no matter what its name or technical form may be." *See* 9 Larson's Workers' Compensation Law § 104.05.

That result follows from the fair compromise of no-fault workers' compensation systems. As the Iowa Supreme Court has explained, the Iowa legislature enacted a robust exclusive-remedy provision for workplace injury claims as part of a workers' compensation system that "provide[s] an expeditious and automatic remedy to injured employees." *Suckow v. NEOWA FS, Inc.*, 445 N.W.2d 776, 778-79 (Iowa 1989) (citation omitted). That "comprehensive statutory scheme[]" reflects a carefully drawn compromise:

> Employees give up their common law rights of actions against employers. In return employers give up their common law defenses and must pay employees for all work-related injuries regardless of fault. . . . [W]orkers' compensation claimants have a way, other than through judicial process, to resolve their claims against employers.

*Id.* (citation omitted). As discussed below, that balance would be upset if Plaintiffs could avoid the IWCA through artful pleading. *Harned*, 331 N.W.2d 98 at 101 (dismissing employees' tort claims where they attempted to plead around the IWCA).

**B.    Plaintiffs cannot circumvent the IWCA by recasting workplace injury claims as fraud.**

Iowa courts have repeatedly held that a plaintiff cannot circumvent the IWCA by recasting a workplace injury claim against an employer as a claim for misrepresentation or another intentional tort where—as here—the gist of the claim is for bodily injury. *See, e.g.*, *Nelson*, 619 N.W.2d at 389 (affirming judgment for the employer: "A mere labeling of a claim for injuries [as an intentional tort] cannot avoid the exclusivity of workers' compensation if the gist of the claim is for bodily injury."). This is because "if the essence of the action is recovery for physical injury or death . . . the action should be barred even if it can be cast in the form of a normally non-physical tort." *Id.* That includes fraud. "[W]here a claim is predicated on the same facts as the work injury itself, simply labeling it as fraud is not sufficient to avoid the exclusivity of the Workers' Compensation Act." *See Cincinnati*, 801 N.W.2d at 863.

The *Mielke v. Ashland* decision is directly on point. 2005 WL 8157992, at *4. In *Mielke*, a plaintiff asserted claims against an employer for misrepresentation and other torts arising out of the alleged workplace death of an employee from leukemia. After removal to federal court, the employer moved to dismiss, arguing that the plaintiff's sole remedy was limited to the IWCA. *Id.* at *1.

The court agreed and dismissed the claim. Citing the Iowa Supreme Court's decision in *Nelson*, the *Mielke* court held that where the plaintiff sued "for damages attributed to an occupational disease she does not dispute arose 'out of'" the employee's employment, the "'mere labeling of a claim for injuries' as an intentional tort [*i.e.* misrepresentation] 'cannot avoid the exclusivity of workers' compensation if the gist of the claim is for bodily injury,' or, in this case, occupational disease leading to death." *Id.* at *4 (citations omitted).

The same reasoning and result apply here. Although framed as a fraudulent misrepresentation claim, the "gist" of Plaintiffs' claim is that Mr. Rodriguez suffered a workplace injury while working at Tyson. Under the clear holdings of *Nelson* and

*Mielke*, this Court is the wrong forum for Plaintiffs' fraudulent misrepresentation claim because it is foreclosed by the IWCA's exclusivity provision. Iowa Code § 85.20.

<div align="center">*   *   *</div>

The rest of this motion **addresses other deficiencies in the complaint, but the Court need go no further** in its analysis. The claims against Tyson are barred because the IWCA requires those claims to be pursued before the Iowa Division of Workers' Compensation.

## II. Plaintiffs' claims are not adequately pleaded.

### A. The complaint fails to plead fraud with particularity.

"[A] party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "The complaint must allege 'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Drobnak*, 561 F.3d at 783 (citation omitted). Put otherwise, "the complaint must plead the '*who, what, where, when, and how*' of the alleged fraud." *Id.* (emphasis added) (quoting *U.S. ex rel. Joshi*, 441 F.3d at 556); *see also Remmes v. Int'l Flavors & Fragrances, Inc.*, 389 F. Supp. 2d 1080, 1088 (N.D. Iowa 2005) (the complaint must "include the time, place, and contents of the alleged fraud; the identity of the person allegedly committing fraud; and what was given up or obtained by the alleged fraud").

**"Information and belief" is not enough.** "Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement." *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020) (quoting *Drobnak*, 561 F.3d at 783). Here, the key allegations that purport to identify the alleged misrepresentations are expressly qualified as on "information and belief." [Dkt. 1-1 ¶ 72 ("Upon Plaintiffs' information and belief, . . . Tyson made numerous false representations and/or omissions . . . .")] Dismissal is appropriate on that basis alone.

Moreover, even those "information and belief" allegations fail to satisfy the rudiments of required particularity.

**Who made the alleged statements?** The complaint alleges that Tyson made a list of alleged statements "through the acts and/or omissions of its agents" (*id*.), but the complaint fails to identify which of Tyson's thousands of employees or agents allegedly made each of the statements attributed to Tyson. *See Weimer v. Int'l Flavors & Fragrance*, 240 F.R.D. 431, 437 (N.D. Iowa 2007) ("[W]here a plaintiff's complaint 'accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud.'") (quoting *Remmes*, 389 F. Supp. 2d at 1088).

Simply "cluster[ing] all the Defendants together without the required specificity to discern the respective roles of the individual defendants in the alleged fraud" does not satisfy Rule 9(b). *Moua v. Jani-King of Minn., Inc.*, 613 F. Supp. 2d 1103, 1111 (D. Minn. 2009); *see also Drobnak*, 561 F.3d at 783 (complaint must allege "the identity of the person making the misrepresentation").[2]

**Where were the statements made?** To allege fraud, "the complaint must allege 'such matters as the time, place, and contents of false representations.'" *Drobnak*, 561 F.3d at 783 (citation omitted); *see also Nuss v. Cent. Iowa Binding Corp.*, 284 F. Supp. 2d 1187, 1195 (S.D. Iowa 2003) ("generalized allegations in [the complaint] as to . . . place" are inadequate). Here, the complaint contains no such allegations.

**When were the statements made?** The complaint fails to allege when the statements were allegedly made. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 358 (8th Cir. 2011) (affirming dismissal where "the Complaint fail[ed] to specify a single date with

---

[2] The complaint alleges statements made by Noel White, Stephen Stouffer, and John H. Tyson (Dkt. 1-1 ¶ 51(a)-(c)), but does not allege that these statements were made to Mr. Rodriguez, how the statements were false or material, or how Mr. Rodriguez relied upon them, among other deficiencies. Indeed, at least one of the alleged statements was made after Mr. Rodriguez passed away. [*Id.* ¶¶ 51(c), 56]

respect to any" allegation of fraud). Particularly in the context of the current pandemic—
where public health guidance and scientific knowledge regarding the virus can change
in a matter of hours—identifying the "when" is critically important to any allegation that
a Tyson representative made a statement knowing it was false. [Dkt. 1-1 ¶ 73]

**How were the statements relied upon?** Finally, the complaint alleges no facts
to support the conclusory allegations that Mr. Rodriguez "acted in reliance of the
truth of the . . . misrepresentations and/or omissions" and was "justified in relying."
[Dkt. 1-1 ¶ 76] *See U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 825 (8th
Cir. 2009) (affirming dismissal where complaint did not "allege with particularity how
any [of the defendants' alleged misstatements or omissions] was material"); *Gibson
v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001) ("To establish a claim of
fraudulent misrepresentation, a plaintiff must prove" that "the representation was
material" and "the plaintiff acted in reliance on the truth of the representation and
was justified in relying on the representation."). Moreover, if the statements them-
selves are alleged only "on information and belief," then statements regarding reli-
ance must also be conclusory.

The lack of particularity also precludes any inference of knowledge or material-
ity. *See Gunderson v. ADM Inv'r Servs., Inc.*, 85 F. Supp. 2d 892, 907 (N.D. Iowa 2000)
("[T]he complaint must set forth specific facts that make it reasonable to believe that
defendant[s] knew that a statement was materially false or misleading."); *Brown v.
N. Cent. F.S., Inc.*, 987 F. Supp. 1150, 1158 (N.D. Iowa 1997) ("The [complaint] is
replete with conclusory assertions that . . . the purported speakers of the misrepre-
sentations . . . knew, at the time they made each alleged misrepresentation, that their
statements were false . . . . However, such conclusory allegations, even of knowledge
of falsity, are insufficient.").

In sum, Plaintiffs' fraudulent misrepresentation claim fails under Rule 9(b) because the complaint "does not identify the who, what, when, where, and how with respect to a single allegation of" fraud. *Crest Constr.*, 660 F.3d at 358 (alterations omitted).

### B. The complaint fails to adequately plead causation, reliance, and knowledge of falsity.

To establish causation, Plaintiffs must plead—and ultimately prove—not just that Mr. Rodriguez contracted COVID-19 from his work (rather than elsewhere), but also that he contracted COVID-19 *due to Tyson's alleged misrepresentations* rather than some other cause. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) ("When ruling on a motion to dismiss, we look to whether the plaintiffs' allegations suffice to show the required causal connection between the defendant's wrongful conduct and the plaintiffs' losses.").

Allegations based on mere speculation are not enough. *See, e.g.*, *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001) ("[P]roximate cause, like the other elements, cannot be based upon mere speculation," and no "consequential fact in a case can be resolved by pure guesswork."); *Hardin Cty. Sav. Bank v. City of Brainerd*, 602 F. Supp. 2d 1012, 1024 (N.D. Iowa 2008) (dismissing complaint that failed to plead causation, noting that "Plaintiffs' conclusory legal allegation of the existence of proximate cause" was insufficient); *U.S. ex rel. Roop.*, 559 F.3d at 825 (affirming dismissal where complaint failed to allege how misrepresentations were material).

The complaint is absent any allegation regarding causation, reliance, or knowledge of falsity that goes beyond mere speculation or conclusion. Plaintiffs assert that Tyson "knew or believed" the misrepresentations were false; that Mr. Rodriguez "acted in reliance of the truth" of the alleged misrepresentations; and that the alleged misrepresentations "were a cause" of Plaintiffs' injuries. [Dkt. 1-1 ¶¶ 73, 76-77] Plaintiffs fail to answer the rudimentary questions of how Mr. Rodriguez relied on the alleged misrepresentations, how this reliance, even if alleged, caused Mr. Rodriguez

to contract COVID-19, and how Tyson knew the statements were false, especially when made upon "information and belief." For these reasons alone, Plaintiffs' fraudulent misrepresentation claim fails. But consideration of the then-existing knowledge of the pandemic further supports dismissal.

*Iqbal* requires a court to use its "judicial experience and common sense." 556 U.S. at 679. Thus, Plaintiffs' bare allegations that Tyson's statements were knowingly false and "were a cause" of Mr. Rodriguez contracting COVID-19 (Dkt. 1-1 ¶¶ 73, 77) must be considered against the backdrop of then-existing knowledge—all of which is either in the complaint or properly subject to judicial notice. The undeniable fact is that everyone—public health officials and all employers, including Tyson—was operating with limited and evolving knowledge at the early stages of the pandemic when Mr. Rodriguez contracted COVID-19.[3] For example, the Governor of Iowa stated at a press conference regarding COVID-19 on April 6, 2020: "[W]e recognize that every day something is changing, and the data is evolving, and we're learning more as we move through the coronavirus pandemic."[4]

Mr. Rodriguez began experiencing symptoms on April 2, the same day that Louisa County (where the facility is located and where Mr. Rodriguez lived) reported

---

[3] This Court may take judicial notice of information contained on a governmental agency's webpage or in agency records and reports. *See Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 518-19 (5th Cir. 2015) (webpage); *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 831 F.3d 961, 968 (8th Cir. 2016) (agency reports). Consistent with these rules, courts across the country—including district courts in this Circuit—have taken judicial notice of basic information about COVID-19. *See, e.g.*, *In re RFC & ResCap Liquidating Tr. Action*, 444 F. Supp. 3d 967, 969 n.1 (D. Minn. 2020) (taking "judicial notice of the [CDC] website" regarding COVID-19, relying on *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016)); *Valentine v. Collier*, 960 F.3d 707, 708 n.1 (5th Cir. 2020) ("[T]his court has taken judicial notice of statistics concerning COVID-19 already.").

[4] *See Iowa Gov. Kim Reynolds Press Conference April 6, 2020, 11 a.m.*, at 31:13-23 (streamed live on Apr. 6, 2020), *at* https://www.youtube.com/watch?v=MOe4pvSnTLM.

its very first positive cases. [Dkt. 1-1 ¶¶ 1, 39][5] Iowa reported its first COVID-19 death on March 24,[6] and as of April 2, Iowa had reported thirteen total deaths in the state.[7]

Plaintiffs have not alleged "sufficient factual matter" to plausibly suggest that Tyson's alleged representations were *false and material*, or that Tyson "*knew the representation[s were] false*" when made—all required elements to plead a fraud claim. *Gibson*, 621 N.W.2d at 400 (emphasis added); *see also Iqbal*, 556 U.S. at 678.

Plaintiffs' bare assertion that Tyson's statements "were a cause" of Mr. Rodriguez contracting COVID-19 likewise must be considered taking into account the current and undisputed recognition that the virus is highly contagious, has proven extremely difficult to trace, and that even recommended prevention methods have limited efficacy.[8]

---

[5] *See Positive Cases by County*, filter by Louisa County, https://coronavirus.iowa.gov/pages/case-counts (last visited Nov. 17, 2020).

[6] *See* Office of the Governor of Iowa, *First COVID-19 Death Confirmed in Iowa* (Mar. 24, 2020), https://governor.iowa.gov/press-release/first-covid-19-death-confirmed-in-iowa-0.

[7] *See Total Deaths*, download raw data, https://coronavirus.iowa.gov/ (last visited Nov. 17, 2020).

[8] For example, the CDC has identified the following challenges and characteristics of COVID-19 that has made curtailing the pandemic extraordinarily difficult:

- **Community spread.** The rapid spread of COVID-19 arises from community spread, defined by the CDC to mean "people have been infected with the virus in an area, including some who are not sure how or where they became infected." *See CDC, Frequently Asked Questions: Coronavirus Disease 2019 (COVID-19)* (last updated Nov. 13, 2020), https://www.cdc.gov/coronavirus/2019-ncov/faq.html.

- **Highly contagious.** As of October 27, more than 8.6 million cases have been confirmed nationwide, and over 116,000 in Iowa, and the numbers in the U.S. and in Iowa continue to increase. *See CDC, U.S. COVID-19 Cases and Deaths by State* (updated Nov. 18, 2020), https://www.cdc.gov/covid-data-tracker/#cases.

- **Many unreported cases.** The CDC estimates that, for every reported case of COVID-19 in the United States, there are ten more unreported cases—in part because millions of Americans have been unknowingly infected. *See CDC, Transcript for the CDC*

In short, in a society in which the coronavirus was—and still is—spreading widely throughout the community, the conclusory allegation that an individual contracted the virus at work is not a well-pleaded fact and, in the absence of further detail, is not entitled to an "assumption of truth." *Iqbal*, 556 U.S. at 678-79; *see also Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) ("Courts must not presume the truth of legal conclusions couched as factual allegations.").

In analogous cases, courts have dismissed complaints for failure to properly allege causation where "judicial experience and common sense" indicate that causation cannot plausibly be assumed. *See, e.g.*:

- **Pneumonia—***Peterson v. Silverado Senior Living, Inc.*, 790 F. App'x 614, 617 (5th Cir. 2019) (affirming dismissal where, "[e]ven

---

*Telebriefing Update on COVID-19* (June 25, 2020), https://www.cdc.gov/media/releases/2020/t0625-COVID-19-update.html.

· **Delayed onset and asymptomatic carriers.** Tracing is difficult because the time between exposure and symptom onset can average a week or more, and because many people are asymptomatic. Even for symptomatic individuals, someone can be infected for up to 14 days before realizing they are sick. Other infected individuals never realize they were sick. Pre-symptomatic and asymptomatic persons are believed to be a significant cause of the pandemic's propagation. *See The Implications of Silent Transmission for the Control of COVID-19 Outbreaks* ("Silent Transmission"), Proceedings of the National Academy of Science of the United States of America (July 28, 2020), https://www.pnas.org/content/117/30/17513; *CDC, Coronavirus Disease 2019 (COVID-19): Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)* ("Clinical Guidance for Management of Patients") (updated Nov. 3, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html; *CDC, Coronavirus Disease 2019 (COVID-19): Clinical Questions about COVID-19: Questions and Answers* (updated Nov. 18, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Transmission; *see also Clinical Guidance for Management of Patients; See CDC, Coronavirus Disease 2019 (COVID-19): COVID-19 Pandemic Planning Scenarios* (updated Sept. 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html.

· **Protections are not perfect.** While the CDC, OSHA, and others have identified steps that can be taken to decrease risk of the spread of infectious diseases such as COVID-19, such as using personal protective equipment ("PPE"), social distancing, and increased handwashing, the effectiveness of such steps is admittedly limited. Even among healthcare providers and others who are using PPE and other protective measures to minimize exposure, the disease is widespread. *See, e.g., CDC, Coronavirus Disease 2019 (COVID-19): How to Protect Yourself & Others* (updated Nov. 4, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

accepting the alleged facts as true, the Peterson's second amended complaint is insufficient to support a plausible inference that Silverado's actions were more likely than not the cause of Ruby's death" because, *e.g.*, "we are being asked first to agree that, of all possible causes, Seroquel caused Ruby's pneumonia");

- **Abdominal pain and liver problems**—*Cary v. Hickenlooper*, 673 F. App'x 870, 875 (10th Cir. 2016) ("But he makes only conclusory assertions that these conditions are the result of exposure to toxic water at SCF. He fails to present any specific facts to show that his exposure to minimally elevated levels of uranium or other toxins at SCF has caused or exacerbated these problems.");

- **Abdominal infections**—*Rincon v. Covidien*, No. 16-CV-10033 (JMF), 2017 WL 2242969, at *1 (S.D.N.Y. May 22, 2017) ("Ignoring conclusory assertions and the recitation of legal standards, however, Rincon fails to allege any facts that plausibly establish . . . causation. . . . Nothing in the Amended Complaint even endeavors to explain why the [defendant's alleged negligence] is a more likely, let alone proximate, cause of Rincon's alleged harms. In the final analysis, therefore, Rincon offers only the sort of '[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements,' that the Supreme Court has made clear is insufficient to survive a motion to dismiss.").

Similar to these cases, no inference of causation or wrongdoing is warranted from the allegation that Mr. Rodriguez became ill with COVID-19. There are many alternative sources of infection. Even if the complaint had adequately alleged that Mr. Rodriguez was exposed to COVID-19 at work, this still would not establish the critical required causal link between his infection and a specific alleged false representation by Tyson. *See Schaaf*, 517 F.3d at 550 ("Unless the plaintiff can show that the defendant's fraud caused his loss, he cannot recover.").

The complaint fails under established pleading standards. It is especially important to adhere to those standards in the midst of a pandemic. The number of individuals infected and who have tragically died is staggering. If conclusory allegations of alleged misrepresentations and causation are permitted, virtually any employer, business,

school, church, or host could be brought into protracted litigation based on speculation. For this reason, to "state a claim to relief that is plausible on its face," more than generalized or conclusory allegations are required. *Iqbal*, 556 U.S. at 678.

### III.   The complaint fails to comply with the Iowa COVID-19 Response and Back-to-Business Act.

The complaint also fails to plead an exception to the recently-enacted "Covid-19 Response and Back-to-Business Limited Liability Act," which provides that claims against property owners cannot be asserted absent a showing of "actual malice," "reckless[]" disregard of "substantial and unnecessary risk," or "intentional[] expos[ure]." Iowa Code § 686D.4.[9]

Iowa courts "construe statutory immunity provisions broadly" and "exceptions to immunity narrowly." *Nelson v. Lindaman*, 867 N.W.2d 1, 9 (Iowa 2015) (citing *Cubit v. Mahaska Cnty.*, 677 N.W.2d 777, 784 (Iowa 2004) (collecting cases construing Iowa immunity provisions broadly)).

Here, aside from conclusory allegations, which are insufficient to show "actual malice," "reckless[]" disregard of "substantial and unnecessary risk," or "intentional[] expos[ure,]" the complaint fails to set forth any factual allegations to satisfy these required elements. In fact, the complaint and "judicial experience and common sense" affirmatively show the opposite. The complaint focuses on the earliest days of responding to the pandemic, and the crux of Plaintiffs' claim is that Tyson should have affirmatively adopted various safety precautions *slightly sooner* than it allegedly did. That is a far cry from the "actual malice," "intentional[] expos[ure]," or "reckless[]" disregard of "substantial and unnecessary risk" required by the Act—standards

---

[9] The Act has an effective date of July 1, 2020, but its provisions "appl[y] retroactively to January 1, 2020." IA LEGIS 1070 (2020), 2020 Ia. Legis. Serv. Ch. 1070 (S.F. 2338). The Iowa Legislature also made clear that the Act "shall not be construed to . . . [a]ffect the rights or limits under workers' compensation as provided in chapter 85, 85A, or 85B." Iowa Code § 686D.8.

which, at the very least, require a showing that Tyson showed *no* care for the risk of exposure. *See Schneider v. Par.*, 242 Iowa 1147, 1153, 49 N.W.2d 535, 538 (1951) ("[T]he Legislature intended the word 'reckless' . . . to mean 'proceeding without heed of or concern for consequences.' . . . Recklessness implies 'no care, coupled with disregard for consequences.'" (quoting *Siesseger v. Puth*, 213 Iowa 164, 182, 239 N.W. 46, 54 (1931)).

Under the Act, Tyson cannot "be liable for civil damages" for Mr. Rodriguez's "exposure to COVID-19," and this case must be dismissed. Iowa Code § 686D.4. In addition, the Act creates a "safe harbor" from liability for persons or businesses that act in "substantial compliance or . . . consistent with any federal or state statute, regulation, order, or public health guidance related to COVID-19." *Id.* § 686D.5. The complaint fails to include allegations that Tyson did not act in substantial compliance with any federal or state statute, regulation, order, or public health guidance.

## IV. Plaintiffs' claims are preempted by federal law.

### A. The complaint takes no account of the broad, express preemption of the Federal Meat Inspection Act (FMIA).

Even if the complaint was not barred by the IWCA, and even if it satisfied federal pleading standards, the allegations of the complaint would still fail to state a claim because Plaintiffs take no account of the federal preemption that applies to federally-regulated meat facilities. The FMIA prohibits states from imposing requirements that are "in addition to, or different than" those prescribed under the Act. 21 U.S.C. § 678. The Supreme Court has held that this provision "sweeps widely" and "prevents a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the Act and concern a slaughterhouse's facilities or operations." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459-60 (2012). If the U.S. Department of Agriculture's Food Safety and Inspection Service ("FSIS") "could issue

regulations under the FMIA . . . mandating" the requirement at issue, then the State's requirement is preempted. *Id.* at 466.

At the core of the complaint, Plaintiffs fault Tyson for not implementing measures *different from* and *in addition to* the requirements that FSIS has imposed regarding employee hygiene and infectious disease. *See, e.g.*, 9 C.F.R. § 416.5(c) (setting federal requirements under the FMIA regarding cleanliness, protective attire, and "disease control"). Preemption follows.

### B. The complaint takes no account of the federal designation of Tyson facilities as critical infrastructure.

The complaint also fails to take account of the designation of food companies as critical infrastructure by the President of the United States, as well as repeated federal directives that Tyson and other meat and poultry processors continue operations as a critical source of food during the pandemic.

Just days after declaring a national emergency, the President explained that employees in "critical infrastructure industr[ies]," including food and agricultural workers, have a "special responsibility" to continue to follow CDC guidelines while providing food during the national emergency, Exec. Office of Pres., *The President's Coronavirus Guidelines for America* at 2 (Mar. 16, 2020), a directive he reinforced through the *Food Supply Chain Resources* executive order under the DPA. *See* Exec. Office of Pres., *Executive Order on Delegating Authority Under the DPA with Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19*, 85 Fed. Reg. 26,313, 26,313 (Apr. 28, 2020). The President's determinations here—concerning the ongoing operations of critical infrastructure during a national emergency—"represent[] a national response to a specific problem of 'truly national' concern." *Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1078-79 (D.C. Cir. 2003). Once the President has made those determinations, "state law is naturally preempted to the extent of any conflict." *Crosby v. Nat'l Foreign Trade Council*, 530

U.S. 363, 372 (2000). Subjecting those national determinations to "concurrent juris-diction" by "local law" would "fully . . . defeat the congressional goals underlying" the DPA. *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 286 (1971).

## CONCLUSION

The coronavirus pandemic has presented unprecedented challenges to govern-ments, businesses, and organizations around the world. Tyson has responded to those challenges, working to meet or exceed federal workplace guidelines to mitigate risks and protect worker safety. Despite the tragedy of Mr. Rodriguez's death, this Court is simply the wrong forum to resolve Plaintiffs' claims. Under the IWCA, workplace injury claims must be adjudicated by the Iowa Division of Workers' Compensation, including exhausting all administrative remedies. For that reason and the others ex-plained above, Plaintiffs' claims should be dismissed with prejudice.

Dated: December 7, 2020                    Respectfully submitted,


/s/  Kevin J. Driscoll
Kevin J. Driscoll          AT0002245
Tamara K. Hackmann     AT0003003
**FINLEY LAW FIRM, P.C.**
699 Walnut Street, Suite 1700
Des Moines, Iowa 50309
Telephone: 515-288-0145
Facsimile:  515-288-2724
Email: kdriscoll@finleylaw.com

Christopher S. Coleman
(*pro hac vice* forthcoming)
**Perkins Coie LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: 602.351.8000
Facsimile:  602.648.7000
Email: CColeman@perkinscoie.com

Mary Gaston
(*pro hac vice* forthcoming)
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000
Email: MGaston@perkinscoie.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that, on December 7, 2020, a true and correct copy of the fore-going document was served upon all counsel of record via the Court's CM/ECF system as follows:

Matthew L. Preston
Ann C. Gronlund
Brad J. Brady
**BRADY PRESTON GRONLUND PC**
2735 First Avenue S.E.
Cedar Rapids, IA 52402

*Attorneys for the Plaintiffs*

/s/  Kevin J. Driscoll